UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LISA VINING, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-269-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by depression with anxiety, chronic obstructive pulmonary disease ("COPD"), a spinal cyst, bipolar disorder, post traumatic stress disorder ("PTSD"), asthma, and sleep apnea disorder, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of depression with anxiety, COPD, and a spinal cyst, Finding 3, Record at 19; that she retained the residual functional capacity ("RFC") to perform less than a

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 1, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with a restriction against climbing ladders, ropes, and scaffolds, an ability to occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl, a restriction against exposure to unprotected heights, dangerous machinery, and pulmonary irritants such as gases, fumes, dusts, and odors, and a limitation to simple, repetitive tasks, with no interaction with the public, Finding 5, *id*. at 21; that, considering her age (40 years old, defined as a younger individual, on the amended alleged disability onset date of January 25, 2008), education (high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 25; and that she therefore was not disabled from January 25, 2008, through the date of decision (February 3, 2009), Finding 11, *id*. at 26.[2]  The Decision Review Board declined to disturb the decision, *see id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than

---

[2] The plaintiff was insured for purposes of SSD benefits through December 31, 2011.  *See* Finding 1, Record at 19. Entitlement to SSI benefits does not depend on insured status.  *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999).

her past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 4 of the sequential process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social Security Ruling 85-28).

At Step 4, the claimant bears the burden of proof of inability to return to past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen*, 482 U.S. at 146 n.5.  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

The plaintiff seeks reversal and remand on several bases, contending that the administrative law judge (i) failed at Step 2 to consider all of her severe impairments, (ii) arrived, at Step 4, at a seriously flawed RFC finding, (iii) erred at Step 5 in accepting testimony of a vocational expert that was inconsistent with the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") and did not otherwise support a finding that there were jobs existing in significant numbers in the national economy that she could perform, and (iv) made a flawed credibility finding. *See* Plaintiff's Amended Statement of Errors ("Statement of Errors") (Docket No. 16) at 3-15. I find no reversible error.

### A. Step 2 (Severity)

The plaintiff first faults the administrative law judge for omitting to determine that she suffered from a severe physical impairment, obstructive sleep apnea, and two severe mental impairments, bipolar disorder and PTSD. *See id*. at 3-6. She asserts that these errors, in turn, seriously compromised the administrative law judge's RFC finding. *See id*. at 6.

#### 1. Obstructive Sleep Apnea

The administrative law judge considered, but rejected, the plaintiff's claim that she suffered from severe obstructive sleep apnea, stating: "As the evidence of record is equivocal regarding whether the [plaintiff] has obstructive sleep apnea, and it was not alleged at the hearing, and no limitations from it are asserted by the [plaintiff], the undersigned finds that it is not a severe medically determinable impairment." Record at 20.

The plaintiff asserts that the administrative law judge erroneously (i) interpreted raw medical evidence in concluding that the evidence was "equivocal" and (ii) wrongly suggested

that she failed to allege that she suffered from the condition or associated symptoms of fatigue and decreased concentration.  *See* Statement of Errors at 4.  I find no error.

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."  Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2009) ("SSR 96-7p"), at 133.  "[S]ymptoms, such as pain, fatigue, shortness of breath, weakness or nervousness, are an individual's own perception or description of the impact of his or her physical or mental impairment(s). . . .  However, when any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'"  Social Security Ruling 96-4p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2009) ("SSR 96-4p"), at 120 n.2; *see also* 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).

The plaintiff's primary care physician, Douglas G. Smith, M.D., referred her for a sleep apnea consultation to Neelam Patel, M.D., of the Pulmonary & Critical Care Department of Central Maine Medical Center ("CMMC").  *See* Record at 249.  In a report dated February 12, 2008, Dr. Patel assessed her with "[p]ossible obstructive sleep apnea" in view of clinical examination findings and a history consistent with that diagnosis.  *See id*. at 251.  He noted that she had agreed to be scheduled for an overnight polysomnogram and "may follow up in four weeks after the sleep study to discuss the results and progress should a mask be prescribed."  *Id*.

In a progress note dated July 21, 2008, Maureen Wood, M.D., of Central Maine Pulmonary Associates, reported:

> [The plaintiff] finally did get the sleep study on April 1, 2008 at CMMC, where she was seen by Dr. Diana Wilson. Her sleep latency was 14 minutes, REM sleep constituted 13% of total sleep time and very little slow-wave sleep was observed. The patient had snoring, respiratory related arousals and obstructive apneas. Her AHI [Apnea/Hypopnea Index] overall was approximately 6, increasing to 10 in the supine position. The patient spent approximately 20% of the night in the supine position. The patient's oxygen saturation was below 89% for approximately 3 minutes however Dr. Wilson is not certain whether this decrease was artifactual. The patient is planning to go for a trial of end expiratory pressure.

*Id*. at 353. Dr. Wood did not include sleep apnea in her list of the plaintiff's problems. *See id*. at 356-57. In a progress note dated July 8, 2008, Dr. Smith stated that the plaintiff "still has difficulty breathing at night and is scheduled for a sleep study on 7/11." *Id*. at 317. He listed sleep apnea among her problems, but stated: "Await formal sleep study[.]" *Id*. at 319. While the record contains a report of pulmonary function testing performed in August 2008 bearing on the plaintiff's COPD, *see id*. at 361-63, I find no further test results bearing on obstructive sleep apnea.

In progress notes dated August 28, 2008, and November 12, 2008, the most recent of record, Dr. Smith did not include sleep apnea in his lists of the plaintiff's problems. *See id*. at 364-66, 371-72. While it is true, as the plaintiff points out, that she testified at her December 30, 2008, hearing that she suffered from fatigue and lack of concentration, she described her drowsiness as a side effect of a prescribed medication and her concentration and focus problems as probably emanating from her fatigue or claimed bipolar disorder, although she had "no clue." *Id*. at 397. She acknowledges that her claimed sleep apnea condition was not discussed at her hearing. *See* Statement of Errors at 4.

On this record, the administrative law judge supportably made a common-sense judgment that the plaintiff had not established that she had a medically determinable impairment of obstructive sleep apnea.[3]

## 2. Bipolar Disorder, PTSD

The plaintiff next asserts that the administrative law judge erred in failing even to address whether she suffered from severe impairments of bipolar disorder and PTSD. *See id*. at 5. She is correct. *See* Record at 19-20. Nonetheless, the error is harmless. As counsel for the commissioner noted at oral argument, the treating psychiatrist who assessed the plaintiff as suffering from bipolar disorder and PTSD, Abhay Singh, M.D., described her as exhibiting "moderate depressive symptoms" on July 7, 2008, and "mild depression and periodic anxiety" on May 13, 2008. *See* Record at 368-69. The administrative law judge took those symptoms into account, finding that the plaintiff suffered from depression with anxiety, *see* Finding 3, *id*. at 19, and according great weight to the mental RFC assessment of Lewis F. Lester, Ph.D., who largely credited the plaintiff's claimed symptoms of depression and anxiety, *see id*. at 22, 315 (mental RFC assessment of Dr. Lester, stating, *inter alia*, "There is a history of physical problems, anxiety, depression and affective instability. [Plaintiff's] statements of functional mental limitations are largely credible.").

---

[3] As the plaintiff points out, *see* Statement of Errors at 3-4, the administrative law judge elsewhere appeared to embrace the diagnosis of obstructive sleep apnea, stating: "In August 2007 to November 2008 medical records, Douglas[] Smith, M.D., the [plaintiff's] treating primary care physician at Second Street Family Practice, confirmed a diagnosis of COPD, lumbar back pain, sleep apnea, and depression/bipolar disorder. In February 2008, Dr. Smith referred the [plaintiff] to Neelam Patel, M.D., of Pulmonary & Critical Care at Central Maine Medical Center (CMMC), for a consultation regarding the [plaintiff's] sleep apnea, with chronic symptoms of excessive daytime somnolence, witnessed apneic pauses, and snoring for many years. . . . [Dr. Patel] reported a diagnosis of obstructive sleep apnea and asthma/COPD." Record at 23. While this seeming discrepancy is troubling, the quoted discussion occurs in the context of the administrative law judge's explanation, at Step 4, that she afforded little weight to a DDS expert's physical RFC assessment because it had been superseded by new medical evidence. *See id*. at 22-23. I have assessed the supportability of the Step 2 determination on the basis of the reasons given in that section of the decision for the finding made.

Because the administrative law judge adopted a mental RFC assessment effectively accounting for symptoms of the plaintiff's claimed PTSD and bipolar disorder, her failure to find those conditions severe at Step 2 is harmless.[4]

### B. Step 4 (RFC)

The plaintiff next assails the administrative law judge's RFC finding, arguing that it is seriously flawed not only by the aforementioned errors at Step 2 but also by (i) adoption of Dr. Lester's mental RFC opinion and rejection of that of Dr. Smith and (ii) failure to consider the effects of stress on the plaintiff's ability to engage in work-related activities, in contravention of Social Security Ruling 85-15 ("SSR 85-15"). *See* Statement of Errors at 6-8. Neither point is persuasive.[5]

#### 1. Resolution of Conflict in Mental RFC Evidence

The plaintiff posits that the administrative law judge erred in adopting the opinion of Dr. Lester, a non-examining expert, who did not have the benefit of review of the complete medical record. *See* Statement of Errors at 7; *see also, e.g., Alcantara v. Astrue*, 257 Fed. Appx. 333, 334 (1st Cir. 2007) ("The ALJ explained that he was relying primarily on the opinion of non-

---

[4] The plaintiff's treating physician, Dr. Smith, submitted a mental RFC assessment reflecting a more marked degree of impairment than found by Dr. Lester. *Compare* Record at 313-14 *with id*. at 376-78. However, as discussed below, the administrative law judge supportably accorded less weight to the Smith assessment than that of Dr. Lester.

[5] At oral argument, the plaintiff's counsel contended for the first time that although the administrative law judge purported to adopt Dr. Lester's opinion, she adopted it only in part, omitting restrictions to the performance of simple tasks in "2-hour blocks" and to adaptation to "occasional and routine" changes. *Compare* Record at 315 (Lester mental RFC) *with* Finding 5, *id*. at 21. He argued that this asserted error, as well, undermined the substantiality of the evidence supporting the administrative law judge's mental RFC determination and contributed to her failure to account for the plaintiff's claimed stress. This point, to which the commissioner's counsel was not prepared to respond and indeed offered no response, was made too late. Hence, it is deemed waived. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

examining, consultant Musiker.  The ALJ could not give Musiker's opinion any significant weight.  It was the opinion of a reviewing consultant, based on a significantly incomplete record, and it was not well justified."); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.  In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

The plaintiff complains, in particular, that Dr. Lester did not have the benefit of a review of Dr. Smith's mental RFC assessment or of Dr. Smith's progress notes or those of Dr. Singh subsequent to May 2008.  *See* Statement of Errors at 7.

For reasons described below, the administrative law judge supportably discredited Dr. Smith's mental RFC assessment.  Accordingly, the fact that Dr. Lester did not see it has no bearing on the question of whether his own report can serve as substantial evidence of the plaintiff's mental RFC.  *See, e.g., Crocker v. Astrue*, No. 07-220-P-S, 2008 WL 2775980, at *3 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 23, 2008) ("[I]n this case, in which, as discussed below, the administrative law judge supportably discounted the plaintiff's testimony concerning the nature and extent of his restrictions, the fact that DDS reviewers did not have the benefit of that testimony does not render their reports incapable of standing as substantial evidence of a claimant's RFC.") (footnote omitted).

As regards the unseen progress notes, the commissioner's counsel persuasively contended at oral argument that they are not inconsistent with, and do not call into doubt, Dr. Lester's findings.  Dr. Lester found that the plaintiff had a history of anxiety, depression, and

affective instability, and that her statements of functional limitations were largely credible, imposing moderate difficulties in social functioning and in ability to maintain concentration, persistence, or pace. *See* Record at 309, 311, 315. Dr. Smith noted on July 8, 2008, that the plaintiff's depression was stable in the care of psychiatry. *See id.* at 319. Dr. Singh noted that, as of May 13, 2008, the plaintiff exhibited mild depression and periodic anxiety, *see id*. at 369, as of July 7, 2008, she exhibited moderate depressive symptoms, *see id*. at 368, and as of September 9, 2008, she exhibited mood disturbances in the context of noncompliance with her mood stabilizer regimen, which the plaintiff wanted to reinstitute, *see id*. at 367. There is no reason to believe that access to this later submitted evidence would have altered Dr. Lester's mental RFC assessment.

I turn to the question of whether the administrative law judge supportably declined to adopt the Smith RFC assessment. Opinions concerning RFC touch on a determination reserved to the commissioner with respect to which even opinions of treating sources are accorded no "special significance." *See* 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3). The administrative law judge was free to decline to adopt the Smith RFC assessment, so long as she supplied "good reasons" for doing so. *See id.* §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g*., Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991

10

(Supp. 2009) ( "SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

The administrative law judge considered, but rejected, the Smith mental RFC assessment on the bases that (i) Dr. Smith was not a mental health professional and (ii) his opinions were not consistent with and supported by the mental health notes of Dr. Singh and the overall evidence. *See* Record at 24.  These are good reasons for the rejection, and they appear to be supported by substantial evidence of record.  *Compare, e.g., id*. at 376-78 (Smith mental RFC opinion finding, *inter alia*, marked limitations in ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, and set realistic goals or make plans independently of others) *with id*. at 367 (note of Dr. Singh dated September 9, 2008, stating that the plaintiff exhibited mood disturbances in the context of non-compliance with her mood stabilizer regimen, which the plaintiff wished to reinstitute, but was neatly dressed and groomed, cooperative, made good eye contact, had no delusions or hallucinations, no suicidal or homicidal ideations, intent, or plan, had a logical and goal-directed thought process, good insight and judgment, and generally intact cognitive functions).  No more was required.

### 2.  Failure To Consider Effects of Stress

The plaintiff finally contends that the administrative law judge's RFC assessment is fatally flawed by her failure to take into account the effects of stress, as required by SSR 85-15. *See* Statement of Errors at 7-8; SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 349 (noting that the mentally impaired "may have difficulty meeting the requirements of even so-called 'low-stress' jobs[,]" and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment").

This court has deemed the requirement to take into account the effects of stress satisfied when an administrative law judge assesses the effect of a mental impairment on the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and customary work situations; and deal with changes in a routine work setting. *See Mason v. Astrue,* Civil No. 08-17-B-W, 2008 WL 4822238, at *4 (D. Me. Nov. 4, 2008) (rec. dec., *aff'd* Nov. 25, 2008).

As counsel for the commissioner pointed out at oral argument, in this case the administrative law judge adopted, and reflected in her RFC determination, the findings of Dr. Lester, who took into account the effect of the plaintiff's mental impairments on the above-enumerated abilities. *See* Finding 5, Record at 21; *id*. at 22; *id*. at 315.

Accordingly, I find no error with respect to the administrative law judge's analysis of the impact of stress.

### C. Step 5 (Other Work)

At Step 5, the administrative law judge relied on the testimony of a vocational expert that a person with the posited RFC could perform the representative occupations of photocopy operator, DOT § 207.685-014, optical assembler, DOT § 713.687-018, and touch-up screener, DOT § 726.684-050. *See* Record at 25.

#### 1. Jobs With GED Reasoning Level of Two

As the plaintiff argues, *see* Statement of Errors at 9, reliance on the jobs of photocopy operator and touch-up screener was misplaced. Adjudicators are obliged to identify and resolve discrepancies between vocational evidence and the DOT before relying on a vocational expert's evidence to support a Step 5 finding. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 00-4p"), at 244

("When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

The DOT describes both the photocopy operator and touch-up screener jobs as having a General Educational Development ("GED") reasoning level of two. *See* DOT §§ 207.685-014, 726.684-050. A job with a GED reasoning level of two, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations [,]" Appendix C, § III to DOT, generally is beyond the capacity of a person limited to simple instructions or simple tasks, *see, e.g., Spearing v. Astrue,* No. 07-138-B-W, 2008 WL 2593790, at *3 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008); *Riley v. Astrue,* No. 06-95-B-W, 2007 WL 951424, at *4 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007).

The administrative law judge did not detect or resolve the seeming conflict between the DOT's description of the jobs in question and the vocational expert's testimony that a person limited to the performance of simple, repetitive tasks could perform them. Hence, the commissioner cannot rely on those jobs to carry his Step 5 burden.[6]

---

[6] At oral argument, counsel for the commissioner cited *Curtis v. Astrue*, Civil No. 09-24-P-S, 2009 WL 3632515 (D. Me. Oct. 30, 2009) (rec. dec., *aff'd* Nov. 23, 2009), in support of the proposition that this court has held that a GED reasoning level of two is compatible with simple work. *Curtis* does not so hold. Rather, the court in *Curtis* declined to extend its line of cases bearing on GED reasoning levels by holding that certain Specific Vocational Preparation ("SVP") levels also are incompatible with the performance of simple tasks or instructions. *See Curtis*, 2009 WL 3632515, at *3. It left its GED line of cases undisturbed. *See id*.

## 2. Job Assertedly Not Existing in Significant Numbers

The plaintiff next argues that the commissioner cannot rely on the sole remaining representative job, that of optical assembler, because it exists in insufficient numbers to constitute a "significant" number of jobs. *See* Statement of Errors at 9-13.

The vocational expert testified that there were 30 such jobs in the state of Maine and 10,000 to 11,000 nationwide. *See* Record at 25, 406. The plaintiff argues that these numbers are too minuscule to be "significant," representing, by her calculations, considerably less than one percent of non-farm jobs in Maine and jobs nationwide. *See* Statement of Errors at 10. She argues that the national number suffers from a further flaw: no testimony was given as to whether the job in question exists in several regions of the country. *See id.*

The commissioner's regulations provide, in relevant part:

[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether –

(1) Work exists in the immediate area in which you live;

(2) A specific job vacancy exists for you; or

(3) You would be hired if you applied for work.

20 C.F.R. §§ 404.1566(a), 416.966(a).

Even assuming *arguendo* that 30 jobs in the state of Maine is not a "significant" number in the region where the plaintiff lives, I conclude that 11,000 nationwide is a significant number in several other regions of the country.

At oral argument, the plaintiff's counsel emphasized that 30 optical assembler jobs in Maine and 11,000 nationwide represent a tiny percentage of the number of total available jobs, by his calculations .0059 percent of the 508,163 non-farm jobs in Maine and .000091 percent of

the 119,917,165 jobs nationwide. *See* Statement of Errors at 10. He cited *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), for the proposition that these kinds of percentages cannot support a finding that work exists in significant numbers in the national economy. Yet, as counsel for the commissioner rejoined, *Hall* cuts against, rather than supporting, a percentage approach. *See Hall*, 837 F.2d at 275 ("[W]hen there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area."); *see also, e.g., Gonzalez v. Secretary of Health & Human Servs.*, 773 F. Supp. 994, 996 (W.D. Mich. 1991) (claimant misapplied *Hall* in citing it for proposition that the number of jobs found by the commissioner was not significant when less than one percent were located in her county; "*Hall* specifically rejected the kind of percentage analysis engaged in here by plaintiff"). I therefore decline to test the supportability of the commissioner's finding by way of consideration of percentages of available jobs.

The plaintiff's counsel also advocated for application by analogy of certain regulations pertaining to the use of Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), a set of tables designed to provide a "streamlined" method by which the commissioner can meet his burden of showing that there is other work a claimant can perform. *Heggarty v. Sullivan,* 947 F.2d 990, 995 (1st Cir. 1991). The cited regulations explain that the Grid presupposes a claimant possessing "sufficient occupational mobility" to adapt to a "major segment" or a "wide or full range" of the category of work in question (*e.g.*, sedentary, light), Grid §§ 201.00(c), 202.00(b), and that the ability to perform a wide or full range of work in that category represents sufficient numbers of jobs to indicate "substantial vocational scope" even for younger individuals who are illiterate and unable to communicate in English, *id*. §§ 201.00(h)(4)(i), 202.00(g).

I am unpersuaded that those regulations cast light on the numbers of jobs necessary to constitute "significant" numbers for purposes of Step 5. By definition, the Grid bypasses the need for customized vocational testimony as to precise numbers of jobs that a claimant remains capable of performing. In keeping therewith, the cited Grid rules explain that because claimants whose profiles fit those addressed by the Grid tables have "substantial vocational scope," they are presumed capable of performing work existing in significant numbers in the national economy. That is a different question from the minimum quantity of jobs sufficient to constitute a "significant" number – a question with which courts have wrestled in the context of customized vocational expert testimony.

The plaintiff points to several cases holding specific absolute numbers too small to be "significant," one pertaining to numbers of jobs nationwide and five to numbers of jobs in a specific region. *See* Statement of Errors at 12. The case addressing numbers of jobs nationwide, *Leonard v. Heckler*, 582 F. Supp. 389 (M.D. Pa. 1983), held that 4,000 to 5,000 jobs nationwide was not a "significant" number given that it was "a minuscule fraction of the number of jobs existing in the national economy." *Leonard*, 582 F. Supp. at 391. Yet, that is less than half of the number of optical assembler jobs the vocational expert testified were available in this case.

"Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Barnhart*, Civ. No. 6:02-CV-1160 (FJS/RFT), 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009). My research indicates that numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held "significant." *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in Iowa and 10,000 nationally a "significant" number); *McGee v. Astrue*, Civil Action No. 08-0831, 2009 WL 2841113, at *6 & n.14 (W.D. La. Aug. 28, 2009) (150 jobs in Louisiana and 18,760 nationally a "significant" number); *Beltran v. Astrue*, No. CV

08-2386-RGK(E), 2008 WL 4999094, at *2 (C.D. Cal. Oct. 14, 2008) (rec. dec., *aff'd* Nov. 18, 2008) (135 jobs regionally and 1,680 nationally a "significant" number). The figure of 11,000 jobs nationwide is in line with what courts have held to be a "significant" number for purposes of Step 5 analysis.

The plaintiff challenges the supportability of the nationwide jobs figure on a final basis: that the commissioner failed to carry his burden of proving that the optical assembler job exists in several other regions of the country. *See* Statement of Errors at 13. It is true that "[i]solated jobs that exist only in very limited numbers and relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b). However, courts have overlooked an absence of testimony that jobs do exist "in several regions of the country" when "a reasonable mind could conclude" that they do. *Beltran*, 2008 WL 4999094, at *3; *see also, e.g., Brun v. Barnhart*, No. 03-44-B-W, 2004 WL 413305, at *6 (D. Me. Mar. 3, 2004) (rec. dec., *aff'd* Apr. 5, 2004), *aff'd*, 126 Fed. Appx. 495 (1st Cir. 2005) ("There is nothing in the nature of the job at issue, surveillance monitor, that suggests that these jobs exist in only a few locations.").

The DOT describes the job of optical assembler as follows: "Attaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using a screwdriver." DOT § 713.687-018. Nothing in that description indicates that this job would be found only in isolated areas, *versus* several regions of the country.[7]

---

[7] To the extent that counsel for the commissioner alternatively contended at oral argument that the optical assembler job is merely representative of similar assembler jobs existing in significant numbers in several regions of the country, his point is not well-taken. The vocational expert gave no testimony regarding either types or numbers of other assembler jobs. The commissioner's decision stands or falls on the testimony actually given and adopted by the administrative law judge.

I find no error in the commissioner's determination, on the strength of the vocational expert's testimony concerning the job of optical assembler, that the plaintiff was capable of performing work existing in significant numbers in the national economy.

### D.  Credibility Determination

The plaintiff finally argues that the administrative law judge undertook a cursory credibility analysis, (i) addressing only one of several factors relevant to evaluating subjective complaints, in contravention of the requirements of Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), (ii) failing to consider all of her claimed symptoms, in contravention of 20 C.F.R. §§ 404.1529(a) and 416.929(a), and (iii) impermissibly relying on her activities of daily living to discredit her allegations of disabling impairments.  *See* Statement of Errors at 13-15.  At oral argument, the plaintiff's counsel emphasized that the administrative law judge had erred in ignoring his client's claimed side effects of medication despite her testimony that she suffered such side effects, notably fatigue, and in relying solely on an overstated and inaccurate recitation of his client's activities of daily living to find her not fully credible.

This plaint is without merit.  This court has rejected the notion that an administrative law judge must slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding.  *See, e.g., Crocker*, 2008 WL 2775980, at *6.  Administrative law judges' credibility findings are entitled to deference, especially when supported by specific findings.  *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in

with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

Even accepting, as counsel for the commissioner acknowledged at oral argument, that the administrative law judge may have slightly overstated the plaintiff's activities of daily living, those activities were not the sole basis of the credibility finding. Instead, the administrative law judge stated:

> Overall, the objective medical findings, a minimal course of treatment, the effectiveness of medications when used correctly, and the lack of any medical opinion concurrent with and supported by treatment notes do not support the claimant's . . . allegations [of disability]. In addition, the claimant has a wide range of activities of daily living which further diminish her credibility.

Record at 22. The plaintiff offers no basis to conclude that the credibility argument, overall, is unsupported by specific findings and hence due no deference.

Nor does the administrative law judge's handling of the issue of side effects of medication afford a basis for reversal and remand. She did in fact consider the issue, acknowledging that the plaintiff claimed "that her medications make her drowsy and tired to the point where she has limited her driving over the past couple of months[,]" *id*. at 21, but concluding that Dr. Singh's "treatment records do not reflect the reported panic attacks, fatigue, inability to concentrate, drowsiness to the extent that [the plaintiff] cannot drive, difficulty waking due to no energy, seclusion, and the need to lie down[,]" *id*. at 22. While the plaintiff attacks the administrative law judge's credibility discussion as cursory, *see* Statement of Errors at 14, she points to no evidence that would have dictated or suggested a different result if discussed, such as medical evidence corroborating the claimed side effects, *see id*. at 13-15.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*


Dated this 6th day of May, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge